**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg Division**

**R. ALEXANDER ACOSTA, SECRETARY
OF LABOR, UNITED STATES DEPARTMENT
OF LABOR,**

   **Plaintiff,**

**v.**              **Civil Action No: 1:17-CV-25 (Keeley)**

**FIRE & SAFETY INVESTIGATION
CONSULTING SERVICES, LLC, AND
CHRISTOPHER HARRIS, INDIVIDUALLY
AND AS OWNER OF FIRE & SAFETY
INVESTIGATION CONSULTING
SERVICES, LLC,**

   **Defendants.**

**DEFENDANTS FIRE & SAFETY INVESTIGATION CONSULTING SERVICES, LLC's,
AND CHRISTOPHER HARRIS' MEMORANDUM IN SUPPORT OF THEIR MOTION
<u>FOR SUMMARY JUDGMENT</u>**

   **I.**   **Statement of Relevant Facts and Procedural History**

   This matter involves allegations that Defendants violated provisions of the Fair Labor

Standards Act (the "Act").  As set forth below, Defendants properly paid their Safety Consultants

("Consultants") in compliance with the requirements of the Act.  For instance, by paying the

Consultants a fixed sum that included overtime compensation for working a regular set number of

hours, the Defendants were compliant with 29 C.F.R. §778.309, which permits this type of pay

structure.  Thus, for the reasons set forth below, Defendants ask that summary judgment be entered

in their favor in this case.

**A.      Defendants at all times paid the Consultants hourly straight and overtime wages.**

Defendants operate a safety inspection and consulting business.  Exhibit 1, DOL142.
Defendants employed the individuals at issue as Consultants.  The Consultants provided on-site
safety consulting services to Defendants' clients in the oil and gas industry.

Defendants initially paid Consultants on a traditional hourly basis, including overtime at
one and one-half times their regular rate for hours worked over 40 per week.  Exhibit 2, Affidavits
of Marble, Bennett and Strauss.  In approximately August 2013, Defendants began transitioning
the Consultants from the traditional hourly basis to an hourly basis consisting of a fixed sum for a
constant amount of hours worked referred to as a "Hitch."  Id., Affidavits of Marble and Strauss.
A standard Hitch was 14 consecutive 12-hour days, followed by 14 consecutive days off.  This
equaled 84 work hours per week.  The fixed sum paid for a two-week Hitch accounted for 40 hours
of straight time pay and 44 hours of time-and-one-half overtime pay for each week of the Hitch.
Id., Affidavits of Garris and Price Buckaloo Davis, Deming, Phillips, and Prater.

When Consultants transitioned from a traditional hourly pay structure to being paid a fixed
sum for a constant amount of overtime, their total pay per Hitch remained roughly the same
because the Consultants' previous regular and overtime hourly pay rates were calculated when
determining their fixed sum pay rate.  Id., Affidavits of Marble and Strauss.  Defendants' payroll
records support this fact.  For instance, Plaintiff has assigned unpaid wages to Consultant Stephen
Barbour.  Exhibit 3, DOL004.  In doing so, Plaintiff ignored the hourly rate stated for Mr. Barbour
in Defendants' payroll records.  Defendants' records show Mr. Barbour worked a full Hitch for
the pay period paid on January 22, 2016.  Exhibit 4, DOL166.  His Hitch rate was $4,545, which
was comprised of a straight time rate of $21.44 per hour and an overtime rate of $32.16 per hour.
Id.  When Mr. Barbour was paid for a full Hitch, he was paid for 40 straight time hours per week

at $21.44 per hour ($1,714.20 for two weeks) and 44 hours per week at $32.16 for overtime ($2,830.08 for two weeks). This totals $4,544.28 per Hitch, which the Defendants rounded up to $4,545.  Id.  However, the Plaintiff attributes Mr. Barbour a regular hourly rate ranging from $27.05 per hour to $63.13 per hour and claims he was not paid an overtime premium, ignoring this evidence to the contrary.  Exhibit 5 at DOL024.

If a Consultant's work schedule deviated from their standard Hitch, Fire & Safety would adjust the Consultant's fixed weekly sum according to the number of hours they worked.  Exhibit 2, Affidavits of Garris and Price Buckaloo, Keen, and Prater.  If a Consultant worked fewer hours than a standard Hitch, their pay would be reduced by a blended pro-rata share of the per-Hitch fixed rate.  Exhibit 6, Deposition Transcript of Carly Harris, at pg. 47 (lines 7-8).  This was an administrative convenience, but it was also done to benefit the Consultants by reducing their pay for unworked hours by less than their overtime rate.

This resulted in Consultants receiving more pay than they were legally entitled to receive for the hours worked.  For instance, for the week ending December 30, 2014, Consultant Jeffrey Hawkins was paid a Hitch rate of $1,846.15 for the 84-hour week.  Exhibit 5 at DOL054.  This translated to a regular hourly rate of $17.42, and an hourly overtime rate of $26.13.  For the week ending January 13, 2015, he worked only 66 hours.  If his 18 unworked hours were subtracted at the overtime rate, he would have had $470.34 subtracted, making his earnings for that week $1,375.81.  However, because only 1/84th of his hitch rate was subtracted for each hour not worked, his earnings for that week were higher ($1,450.55).  Id.  He received more pay than he was required to receive under the Act.  Adjustments to Consultants' work hours were by the hour or partial hour, rather than by the day or by the Hitch.  This reflects the fact that an hourly rate underlies the regular Hitch rate, rather than a day rate or a salary. Id.

3

The fixed rate pay structure was explained to the Consultants, including information on their regular hourly rate.  Exhibit 2, all Affidavits except Gascon; Exhibit 7, Deposition of Defendant Harris, at pgs. 43 (lines 1-4), 46 (lines 18-24), 47 (lines 2-4), 51 (lines 13-21), and 52 (lines 4-6).  Employee Carly Harris, who deals with payroll issues for Fire & Safety, has testified that she would provide Defendant Harris with an hourly rate for prospective employees. Mr. Harris would then tell the prospective employee what the Hitch rate and the hourly rate were.  Exhibit 6 at pgs. 31, 38, and 80.  Numerous employees have provided sworn Affidavits describing how they were paid under the fixed rate structure.  The Affidavits show a clear understanding between the Defendants and the Consultants as to the existence of this pay structure.  It is confirmed by Defendant Harris' testimony. Exhibit 7 at pgs. 43 (lines 1-4), 46 (lines 18-24), 47 (lines 2-4), 51 (lines 13-21), and 52 (lines 4-6).

The transition to this fixed rate pay structure was gradual, with some Consultants transitioning to this structure later than others.  Exhibit 2, Affidavits of Marble, Bennett and Strauss.  However, some Consultants remained on a traditional hourly pay structure permanently if they did not regularly work the set Hitch.  Id., Affidavit of Gascon.

In October 2015, an unknown Consultant complained to the Department of Labor ("DOL") that the Hitch pay structure violated the Act.  Exhibit 8, DOL017-DOL018.  In January 2016, Plaintiff's Investigator, Karen Mathes, visited Fire & Safety to determine the validity of these complaints.  Exhibit 9, DOL144-DOL148.

**B.**     **Much of the information upon which Plaintiff bases its allegations is untrue and was the result of an insufficient investigation.**

Plaintiff's allegations are based on a completely inadequate investigation.  The case was developed using assumptions rather than facts and the truth.  The inadequacies of this investigation began to rear their head from the beginning, as evidenced by the initial intake sheet compiled by

4

Investigator Mathes.  Exhibit 9, DOL144-DOL148.  This initial intake sheet was not filled out properly and completely.  The section of the intake sheet for information about salaried employees was left blank.  Id. at DOL146.  This was done despite the fact Defendants had employed certain exempt salaried employees, including Bill Hamrick, Carly Harris, Rodney Harris, and Joseph Bennett.  Exhibit 2, Affidavit of Bennett; Exhibit 4, DOL166, DOL168-169.   Information regarding hourly employees, including Consultants, was also woefully inadequate.  Exhibit 9 at DOL146.  Investigator Mathes listed only two broad categories of workers: office staff and fire investigators.  There was no list of individual employees.  She simply listed that the office staff was paid overtime and that the fire investigators were paid between $35 and $70 per hour.  Id.  There was no effort to identify the Consultants who were supposedly the subject of this investigation.  Further, there was no effort to identify the overtime rate of any employees.  In fact, there was not even an effort to identify the regular rate of pay of the Consultants, which is necessary because they are distinctly different than the fire investigators.  Id.

The failure to investigate how overtime hours were accounted for is similarly egregious. Investigator Mathes noted that overtime hours were worked, but then did not bother to move on to the obvious follow-up question: "how are OT hours paid?"  Id.  Defendants explained to her that overtime was included in the Consultants' rate of pay.  It was explained to her that Consultants worked a fixed amount of overtime and that this was accounted for in their pay calculation.  It was also explained that this had been made clear to the employees.  Exhibit 7 at pgs. 43 (lines 1-4), 46 (lines 18-24), 47 (lines 2-4), 51 (lines 13-21), and 52 (lines 4-6); Exhibit 2, Employee Affidavits. Investigator Mathes nonetheless chose to state, "Safety Consultants (salary) work 2-[week] hitches, [paid] once for that hitch per month unless [employee] works extra hitch."  Exhibit 9 at DOL147.  There was no reference to the fact this included overtime.  Thus, it was evident from

the beginning that the investigation was to be based on assumptions rather than facts and an effort to get at the truth.

Investigator Mathes' deposition testimony reinforces the fact that no effort was made to determine how overtime hours were accounted for.  When asked whether she inquired of the workers she interviewed if overtime was included in their Hitch rate, Ms. Mathes responded "I don't recall."  Exhibit 10 at pg. 28 (lines 21-23).  When asked whether she inquired of a particular employee whether the fixed rate he was paid included straight and overtime hours, she responded "I don't know that I asked that." Id. at pg. 85 (lines 9-12).  When asked if she took any steps to ascertain whether overtime was included in the rate paid to this employee, Investigator Mathes replied "I don't know." Id. (lines 16-18).  When queried as to whether she asked the employee if their rate of pay included overtime, she said "I don't know." Id. at pg. 87 (lines 5-7).

Investigator Mathes provided similar responses when asked about her interviews with other employees.  For example, when questioned about whether she inquired of another employee whether his fixed Hitch rate included overtime, she replied "I don't know." Id. at pg. 91 (lines 22-24).  Another employee reported his pay as being $4,725 per two-week Hitch.  When asked if this could be considered a fixed sum for a constant amount of overtime, Investigator Mathes said "I don't know, just based on what I see." Id. at pg. 93 (lines 6-12).  She then admitted that she never asked this employee whether his fixed rate of pay included both straight and overtime pay.  Id. at pg. 94 (lines 3-5).  When asked if another employee (who had admitted that he was paid a flat rate every two weeks) could have been receiving a fixed sum for a constant amount of overtime, she replied "I don't know."  Id. at pg. 99 (lines 18-25).  She provided similar responses for other employees.  Id. at pgs. 101 (lines 22-24 and 102 (lines 9-13).  The fact that many of the employees to whom the Plaintiff has attributed unpaid wages provided an Affidavit stating that they were paid

6

a constant amount of overtime underscores the egregious nature of this omission, and its importance to the integrity of the investigation.  Exhibit 2, all Affidavits except Gascon.

The investigation also included interviews with employees who responded to a letter from the Department of Labor requesting information.  The overwhelming majority of these statements do not contradict Defendants' pay structure.  For example, one employee stated they were paid "a flat rate every two weeks" and that they "worked 14 12-hour shifts, back-to-back."  Exhibit 11 at DOL120.  This statement is consistent with a pay structure for a constant amount of overtime condoned under 29 C.F.R. §778.309.  Another employee stated that he was hourly and that he never worked over 40 hours in a week.  Id. at DOL110-DOL111.

Only two of the 11 employee statements taken by Investigator Mathes appear to even possibly contradict the stated pay structure.  Exhibit 11 at DOL 132-DOL135.  One of the two employees claims to be paid "a day rate of $200.00+ per day."  Id. at DOL 132.  Investigator Mathes made no effort to ascertain the employee's true rate and method of pay.  Had she asked, she would have been told that this rate included both 8 hours of their straight time rate and 4 hours of their overtime rate.

The failure to inquire whether Defendants' pay structure complied with 29 C.F.R. §778.309 is especially troubling because employee statements strongly suggest that it was relevant.  Exhibit 11 at DOL120. As discussed above, the overwhelming majority of the statements given to the investigator by employees indicated, at a bare minimum, that a fixed sum for constant amount of overtime structure was possible.  Exhibit 11.

At deposition, Investigator Mathes acknowledged that it was explained to her by representatives of Fire & Safety that the individuals in question were paid a Hitch rate that was a fixed sum. Exhibit 10 at pg. 59 (lines 4-13).  She admitted that she reviewed 29 C.F.R. §778.309

However, her file does not contain any reference to said regulation.  Thus, based on the facts provided by both the Defendants and their employees, an inquiry as to whether the fixed sum pay structure was appropriate should have been made before putting the Defendants through the burden of a law suit.  Investigator Mathes testified she had "no idea" whether employees were paid on a fixed sum basis with overtime compensation included.  Exhibit 10 at pg. 30 (lines 3-7).

Investigator Mathes admits that she does not recall ever investigating an employer who used a fixed sum method that included overtime.  Id. at pg. 8 (lines 22-25).  She claims she was never told the employees were nonexempt.  Yet, by February 7, 2016, Fire & Safety had provided a detailed spreadsheet explaining that the Consultants were not exempt.  Exhibit 12.  The Consultants were being treated as hourly employees being paid a Hitch rate that included both straight and overtime pay.

Investigator Mathes agrees there were several employees she did not speak with.  Exhibit 10 at pg. 32 (lines 12-14).  According to sworn statements from employees, she did not contact them.  Exhibit 2, Affidavits of Gascon and Wetzel.  One employee even tried to contact Investigator Mathes multiple times and never received a return call.  Id., Affidavit of Strauss.  When asked if she contacted the employees that Fire & Safety asked her to reach out to, so the employees could explain their agreement with the company, Investigator Mathes was instructed not to answer by Plaintiff's counsel.  Exhibit 10 at pg. 74-75.

Investigator Mathes did know that that the Consultants were paid on an hourly basis with overtime prior to the switch to a fixed rate.  Id. at pg. 35 (lines 12-15).  Had she looked at the records, she would have known that the rates of pay essentially remained the same after the switch to a fixed rate system, which is evidence that this was not sham agreement.  She did not even know without looking at the records whether the hourly rates had been converted as part of this switch

8

to a fixed rate system.  Id. (lines 20-24).  However, she testified that she had no reason to disagree with an employee's assertion that he understood his compensation to include time and one-half for hours worked in excess of 40 hours per week.  Id. at pg. 40 (lines 20-25) and 41 (lines 1-2). Investigator Mathes' supervisor, Catherine Glencoe, testified that she recalled discussing the fact that some Consultants in the past were paid a traditional hourly rate and time and one-half for overtime.  See Exhibit 13 at pg. 35 (lines 3-8).  However, she did not know why Defendants stepped away from that pay practice, nor did she check to see if it changed the Consultant's income. Id. at pg. 36 (lines 4-9).

Investigator Mathes was asked how the fixed sum payment for a constant amount of overtime provision of 29 C.F.R. §778.309 works.  She stated that she did not know how to answer that question.  Exhibit 10 at pgs. 49 (line 25) and 50 (lines 1-3).  She could not give an example of how it worked.  Id. at pg. 50 (lines 4-5).  She could not recall any other investigations where she had looked at this particular regulation. Id. (lines 6-9).

Investigator Mathes does admit that she took the straight time rate Fire & Safety gave her to see if employees were paid for 44 hours overtime per week at an appropriate rate.  Id. at pg. 71 (lines 14-18).  Investigator Mathes acknowledged that the employees did receive such payment. Id.  (lines 19-21).  She also admitted that she had no reason to dispute Affidavits from employees that their fixed sum of pay included a regular hourly rate and an overtime premium.  Id. at pgs. 75 (lines 12-25) and 76 (lines 1-5).  She also agreed that, of 9 signed employee statements obtained by the Department of Labor, 8 of these employees stated they were paid a fixed sum for a certain schedule.  Id. at pg. 97 (lines 5-15).  Despite all this, Plaintiff continues to refuse to address the fixed rate pay structure the Defendants were obviously using.

The Plaintiff's repeated allegation that the Defendants paid Consultants a day rate raises additional questions about the thoroughness of the investigation.  Investigator Mathes failed to consider, or even investigate, the fact that Consultants could not have been paid a day rate because their earnings for several pay periods were based upon a number of hours worked, not the number of days.  Exhibit 5 at DOL044, DOL054, and DOL058.  It is undisputed that almost all of Defendants' employees, with few exceptions, worked 12-hour days.  Exhibit 5.  Therefore, their hours worked in a given pay period would necessarily have to be a multiple of 12 for their payment method to be a day rate.  Because this is not always the case, a thorough investigation would have concluded that the Defendants did not pay a day rate.

On approximately December 22, 2017, Defendants began to show a breakdown of the hourly makeup of the Consultants' fixed sum payments on their pay stubs due to the insistence of the Department of Labor.  This breakdown showed the number of straight and overtime hours paid in each Hitch worked, just like in 2013-2014.  When this transition was made, the Consultants' rate of pay for a full Hitch did not change from when they were paid a fixed sum.  Exhibit 2, Affidavits of Davis, Deming, Strauss, and Wetzel.

Also of interest is the length of time it took Investigator Mathes to complete her investigation.  The initial complaint was made on October 20, 2015.  Exhibit 10 at pg. 107 (lines 2-4).  She did not make her conclusions until January 26, 2017.  Id (lines 5-7).  Generally, investigations are expected to be completed in 90 days.  Id. at pg. 105 (lines 6-9).  This investigation lasted over 15 months due to the fact Investigator Mathes requested a number of extensions.  Id. (lines 13-15).  Of course, when asked why she requested these extensions, she stated "I can't say for sure. I don't know."  Id. (lines 16-17).  When asked what her recommendations and conclusions were, she was instructed not to answer.  Id. at pg. 106 (lines 5-

9).  Finally, when asked whether, knowing what she did following her deposition, if she would pursue this case, she replied "I don't know."  Id. at pg. 107 (lines 8-11).  Despite the above, on February 22, 2017, the Department of Labor filed its "Complaint" against the Defendants regarding the employees categorized as Consultants.

**C.     Plaintiff's improper actions continued following its slipshod investigation.**

The Complaint makes contradictory allegations regarding Defendants' alleged pay practices.  Section V of the Complaint first alleges that "Defendants paid non-exempt employees a **straight salary**."  Complaint at §V (Emphasis added).  In the next sentence, the Complaint directly contradicts itself by claiming that "[t]he employees were paid pursuant to **day rate** schedules[.]" Id. (Emphasis added).  Thereafter, the Complaint alleges both that Defendants "paid the employees a **day rate** for all hours worked" and also that they paid "non-exempt employees … a **per-Hitch salary**."  Id. at §VI. (Emphasis added).

The Complaint gores on to allege that "[e]mployees who didn't work the full fourteen day work period, also known as "a full Hitch", were paid less than the agreed upon $375 per day[.]" Id.  This further contradicts the previous allegations.  An employee who is paid less for working fewer hours or days is not paid a "straight salary" as previously alleged.  Further, an employee paid a $375 "day rate" is not being paid "per Hitch," which covers a two-week period.  Finally, the allegation that the Consultants were paid a $375 per day rate is false given the fact the Consultants were paid different Hitch rates and sometimes did not work all the hours in a Hitch.

Plaintiff nevertheless accuses the Defendants of paying both a salary and a day rate in its Complaint without so much as addressing this inconsistency.  See Complaint at §V.  This is far more suggestive of a fixed sum scheme in which employee compensation fluctuates in the rare event that their hours worked fluctuate.  The fact that the Defendants' pay structure did in fact

fluctuate according to hours actually worked is also corroborated by several employee Affidavits. Exhibit 2, Affidavits of Garris and Price Buckaloo, Keen, and Prater.

Plaintiff's refusal to address the fixed rate pay structure did not cease with the investigation. Over the course of this lawsuit, the Plaintiff refused to acknowledge that the fixed sum structure condoned by 29 C.F.R. §778.309 is a legitimate way to pay employees.  In discovery, Plaintiff was asked to admit that Fire & Safety employees working in compliance with 29 C.F.R. §778.309 would be permitted to do so legally.  Plaintiff responded that there was insufficient information to confirm or deny this assertion.  See Exhibit 14, Response to Request for Admission No. 1.  Thus, even the Plaintiff effectively admits that Fire & Safety could be in compliance.

Defendants requested that past records back to 2013 be reviewed to show Consultants were paid straight time and overtime hourly rates and then converted to a fixed rate that resulted in the same pay when they worked the full Hitch.  Plaintiff refused to do so.  Exhibit 15, Response to Interrogatory No. 6.  Defendants also sought information regarding when Plaintiff had instituted similar civil actions against other employers in the fields of safety and/or environmental consulting.  Plaintiff refused to provide such information on grounds such as it being irrelevant to Defendants' claims that others in the industry used a similar pay structure.  Id. at Response to Interrogatory No. 14.  Plaintiff was maintaining its position that the Consultants were being treated as exempt professional, salaried employees and not considering the fact the Consultants were being paid using an acceptable fixed rate method.  Defendants were seeking the requested information to see if the Department of Labor had allowed the use of 29 C.F.R. §778.309 in any other case.

The Department of Labor was also asked to produce any documents it had that supported Fire & Safety's position that the Consultants were paid a fixed sum that included overtime.  The Department of Labor referred to documents it produced in discovery.  Similarly, when asked to

produce any documents that contradicted the position that Defendants were paying a "day rate," Plaintiff pointed to documents produced in discovery.  Exhibit 16, Responses to Requests for Production No. 4 and 10.  By indicating they had documents in their possession showing that the Consultants were paid a fixed sum that included overtime and that they were not paid a day rate, Plaintiff contradicts its own claims.

Plaintiff also stated that it could not admit or deny whether the employees regularly worked a "Hitch" of 12-hour days for 14 consecutive days. Exhibit 14 at Request for Admission No. 6. Plaintiff even denied that one employee provided a statement asserting "I never worked over 40 hours per week.  Id. at Request for Admission No. 12.  Plaintiff did so despite the fact the written statement was given by the employee to the Department of Labor and produced by the Plaintiff" in discovery. Id.  Similarly, Plaintiff denied that an employee provided a statement saying, "I was paid for any extra hours" when that statement was provided to the Department of Labor and produced by the Department in discovery.  Id. at Request for Admission No. 15.

The damage calculations for the Consultants who allegedly worked twenty-four (24) hour shifts at Defendants' Ohio job sites are also obviously incorrect.  Exhibit 17, DOL314.  Investigator Mathes calculated the average number of hours worked per Hitch by averaging the alleged rest hours of three employees, which came out to 9 hours.  Id.  She then subtracted that number from the 24-hour shift, to reach the claimed conclusion that these employees worked 15-hour days, or 210-hour Hitches, for damages purposes.  Id.

However, for the employee designated "EE #1," Investigator Mathes states that he worked "***at least*** 10 hrs. per day, 70 hrs. per week."  Id.  (Emphasis in original).  She also states that his rest time varied among 8, 10, and 12 hours per 24-hour shift.  Id.  She averages these three numbers to calculate EE #1 as having 10 hours of rest per shift, and therefore 14 hours of work.  Id.  This

is internally contradictory.  The stated 10-hour minimum shift would necessitate 14 hours of rest, mathematically.  Therefore, the employee's statement that he had either 8, 10, or 12 hours of rest per shift is impossible if he occasionally worked 10-hour shifts.  Therefore, the 14-hour rest shifts should have been averaged with the other shifts, which would make his calculated average rest time 11 hours per day, not 10.  This would make the standard work Hitch 205 hours, instead of the 210 determined by Investigator Mathes.  This error should invalidate the Plaintiff's claims about the damages owed to Defendants' alleged 24-hour employees.

Despite an inadequate investigation, a contradictory Complaint, and no evidence to sustain its claims, Plaintiff has continued to pursue this matter.  Thus, Defendants must ask this Court for summary judgment to be entered in their favor.

## II.      Standard of Review

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a) and (c)(1)(A).  The Court reviews all the evidence "in the light most favorable" to the non-moving party.  *Walker v. Mod–U–Kraf Homes, LLC*, 775 F.3d 202, 207 (4th Cir.2014).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party has made the necessary

showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S. Ct. 2505 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52, 106 S. Ct. 2505.

### III.    Argument

**A.    The Defendants did not violate 29 U.S.C. §207 or 29 U.S.C. §215(a)(2), because all Employees identified by the Plaintiff were properly paid according to a method compliant with the Fair Labor Standards Act during the relevant time period.**

One of the most glaring misconceptions held by the Department of Labor in this case is that each of Defendants' employees were compensated according to an identical method. Each employee was paid by one of two methods of compensation approved by the Act: (1) a fixed sum "per Hitch" that was mutually understood to compensate the employee for both their straight time and overtime hours worked on an invariable schedule; or (2) an ordinary hourly basis. All employees named by the Plaintiff as allegedly being improperly paid under the Act were in fact compensated legally and adequately.

**1.    Legal standards for a claim for failure to pay overtime under the Act.**

Defendants allegedly violated Sections 7 and 15(a)(2) of Act by failing to pay certain employees at the prescribed overtime rate for hours worked in excess of 40 per week. Section 7(a)(1) states that:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

15

29 U.S.C. §207(a)(1).

Likewise, Section 15(a)(2) requires as follows:

> … "it shall be unlawful for any person— … (2) to violate any of the provisions of section 206 or section 207 of this title, or any of the provisions of any regulation or order of the Secretary issued under section 214 of this title."

29 U.S.C. §215(a)(2).

The Department of Labor bears the burden of proving that an employer did not apply an alternate overtime compensation method correctly.  The U.S. Court of Appeals for the Fifth Circuit in *Samson v. Apollo Resources, Inc.*, 242 F.3d 629 (5th Cir. 2001), noted that, while an employer bears the burden of proving that an employee is ***exempt*** from overtime compensation, ***alternate methods of overtime compensation are not exemptions***.  *Samson* at 636 (a plaintiff bears the burden of proving that employer improperly applied the fluctuating workweek method of overtime compensation); *Griffin v. Wake County*, 142 F.3d 712, 715 (4th Cir. 1998) (applying the fluctuating workweek method of overtime compensation under 29 C.F.R. §778.114 is not an overtime exemption).  Therefore, because the plaintiff generally bears the burden of proof in such cases, they also bear the burden of proving that an alternate method of overtime compensation, such as the fixed sum for a constant amount of overtime exemption under 29 C.F.R. §778.309, was not applied correctly.  *Samson* at 636.

Defendants at all times compensated the Consultants using a method approved by the Act. Plaintiff cannot meet its burden of showing that the Defendants failed to correctly apply these overtime compensation methods.

2.    **The Defendants properly compensated employees according to the Fixed Sum for Constant Amount of Overtime method condoned by 29 C.F.R. §778.309.**

29 C.F.R. §778.309 permits employers to pay employees a fixed sum of compensation for a constant amount of overtime in a single pay period.  This regulation states as follows:

> Where an employee works a regular fixed number of hours in excess of the statutory maximum each workweek, it is, of course, proper to pay him, in addition to his compensation for nonovertime hours, a fixed sum in any such week for his overtime work, determined by multiplying his overtime rate by the number of overtime hours regularly worked.

This regulation was addressed in the unpublished case of *Smith v. Association of Maryland Pilots,* 89 F.3d 829 (4th Cir. 1996) (Exhibit 18).  In *Smith,* the employees were paid using a structure identical to the majority of the Defendants' consultants.  The pilots worked 14 consecutive 12-hour days and were paid a fixed rate for that period of work.  *Smith* at *1.  There was no written policy stating that overtime was included in the compensation, nor was that a term of the applicable collective bargaining agreement.  Id.

The Fourth Circuit affirmed the holding of the District Court that the pilots were properly compensated under §778.309, stating that "neither the absence of specific language… nor the deposition or affidavit testimony presented facts that contradicted the Association's proof that the Association and Union had agreed in the 1991-1994 agreement that launch operators were to be paid a wage rate that included overtime pay."  Id. at *2.  The Fourth Circuit cited the deposition testimony of a union representative that "there was a clear understanding ... [that] overtime and wages [were] all included in the 12-hour day."  Id. at *1.  Also relevant was the fact that the plaintiff therein received additional compensation during Hitches where he worked more than the standard amount of overtime.  Id.  Further, the Court was unpersuaded by deposition testimony

from a representative of the Association that an hourly pay rate had never been calculated for Mr. Smith. Id.

The pay structure applied to the Defendants' Consultants bears the hallmarks of the situation addressed in *Smith*. Employees worked 14-day "Hitches" that included a standard 12-hour per day schedule. Thus, there was a fixed "per-Hitch" schedule of 84 hours per week, including 40 straight time hours and 44 overtime hours. Exhibit 2, Affidavits of Garris and Price Buckaloo, Davis, Deming, Keen, Phillips, Prater, and Wetzel. Thirteen employees have testified in sworn Affidavits that they understood their Hitch rate compensation to include their fixed amount of overtime. Exhibit 2, all Affidavits except Gascon. Further, Consultants whose working hours varied from the ordinary number, either working more or less than a standard Hitch, had their compensation fluctuate accordingly. Exhibit 5, DOL020-DOL103.

While there were no explicit written agreements, *Smith* has demonstrated that this is not necessary to have a legal compensation structure in accordance with 29 C.F.R. §778.309. *Smith* has also demonstrated that it is not even necessary to list an hourly rate for employees paid in accordance with §778.309.

In the present case, there was no explicit written agreement. However, there is an overabundance of evidence that the Defendants and the Consultants understood and agreed to this compensation plan. The Consultants were told their hourly rate prior to being employed. The compensation plan in *Smith* did not list an hourly rate. Thus, the wage plan in the case at bar cannot be considered invalid since the parties have stipulated to a wage inclusive of overtime that is in compliance with the Act.

Under Fire & Safety's agreement with the Consultants, when the Consultants did work fewer hours than a standard Hitch, their hourly earnings were actually higher than what they were

18

entitled to.  If a Consultant working the standard Hitch worked fewer than 84 hours in a week, their earnings were reduced at a blended rate, 1/84th of their weekly fixed earnings, rather than reduced at their overtime rate.

A similar practice was addressed in *Adams v. Department of Juvenile Justice of City of New York*, 143 F.3d 61 (2d Cir. 1998).  In *Adams*, the employees at issue were house supervisors paid a fixed annual sum for fixed 60-hour work weeks, accounting for 40 hours of straight time and 20 hours of overtime.  Id. at 64.  The employer also subtracted earnings for weeks in which the employees worked less than 60 hours at a blended rate (1/60th of their weekly fixed earnings), rather than at their overtime rate.  Id. at 70.  The Court noted that this practice resulted in the employees receiving more wages than they would be entitled to under the terms of the agreement. Id.  The Court's opinion reflects that this practice is permissible, so long as the agreement is not a sham, and the Consultants' individual regular hourly rates as represented by the employer are their actual regular rates.  Id.  There is clear evidence that the agreements between the Defendants and the Consultants were not shams.  The Department of Labor has the burden to prove the agreements were a sham, and no such evidence exists.

Also instructive in this matter is the unreported case of *Sandel v. Fairfield Industries, Inc.*, 2015 WL 7709583 (S.D.Tex. 2015) (Exhibit 19).  In that case, the Defendant operated a fleet of vessels that worked offshore.  Crews worked either 28 or 35 days, after which they had time away from the vessel lasting approximately the same length. Id. at *1. The Court described the situation as follows: "a full 'Hitch' is approximately 28 days on and 28 days off, or 35 days on and 35 days off."  Id.  Workers were paid based on a 12.5-hour work day for 7 days a week, a total of 87.5 hours per week.  They were paid a lump sum consisting of 40 hours of straight time and 47.5 hours of overtime per week as part of their compensation. Id.

In *Sandel*, the plaintiffs acknowledged that 29 C.F.R. §778.309 allows for flat rate payment if there is a consistent number of overtime hours worked. Id. at *3.  However, the plaintiffs therein argued that there was no evidence the employer was even aware of the existence of this regulation. Id.  The Court noted, among other things, that the employer had Affidavits from two employees swearing that the compensation plan included overtime. Id.  The Court determined there was sufficient evidence to defeat plaintiffs' claims for summary judgment on the issue that the compensation plan did not include overtime.  Id.

In the present case, there is significantly more evidence.  The Defendants constructed a plan that clearly included overtime.  The plan was to convert the Consultants from straight time and overtime to a fixed rate that included both.  The plan contemplated paying the employees a fixed sum for a constant amount of hours worked and accounted for their overtime hours.  Exhibit 2, all Affidavits except Gascon.  Further, there are not two but 13 Affidavits from employees acknowledging that they knew their pay included compensation for overtime.  Id.  Both Defendant Harris and Carly Harris have testified to this fact.  Exhibits 6 and 7.

Potentially the most compelling evidence that the Defendants employed this permissible pay structure appears in the transition from traditional hourly pay to the fixed rate structure.  For all employees who were transitioned to fixed rate from hourly, their total compensation remained roughly the same.  Exhibit 2, Affidavits of Davis, Deming, and Marble.  In addition, when the Defendants began to include a breakdown of straight time and overtime hours paid on pay stubs in late 2016 to early 2017, the Consultants' per-Hitch income also matched their previous fixed-sum rate.  Id., Affidavits of Davis, Deming, Strauss, and Wetzel.  Thus, even if it was not specifically referenced in a written agreement, Defendants compensated their employees in the method condoned by 29 C.F.R. §778.309, and thus acted in compliance with the Act.

Also significant is the fact that the employees themselves in the statements they gave to Investigator Mathes said almost nothing that would contradict this position.  Exhibit 10, DOL106-124; DOL132-141.  Only two even possibly contradict it.  Defendants have proffered significant evidence that substantially all their employees were paid according to the permissible fixed sum for a constant amount of overtime acknowledged by 29 C.F.R. §778.309.  Plaintiff has brought forward no reliable evidence to suggest otherwise.  Defendants are entitled to Summary Judgment on this basis.

**3.      The Defendants properly complied with Section 701(a)(1) and 15(a)(2) of the Act.**

The Defendants abided by Section 7(a)(1) of the Act by paying their employees time and one-half for hours worked over 40 in a workweek.  The fixed Hitch payments obviously accounted for overtime for all such hours worked over 40 in a week.  The Defendants and the Consultants clearly had an agreement that the Consultants would be paid a fixed sum that included overtime compensation.  While there was no written agreement, no written agreement was necessary.  As previously been noted by a federal court: "[t]he fact that there was no written agreement does not negate the existence of such an agreement." *Rousseau v. Teledyne Movible Offshore, Inc.*, 619 F. Supp. 1513, 1518 (W.D. La. 1985), affirmed in part and reversed in part by *Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F. 2d 1245 (5th Cir. 1986).  Thus, Defendants have complied with Section 7(a)(1) and 15(a)(2) of the Act.

In *149 Madison Ave. Corporation v. Asselta*. 331 U.S. 199, 67 S. Ct. 1178 (1947), the United States Supreme Court upheld lower court rulings that a wage agreement did not satisfy the Act.  However, that wage agreement did not appropriately account for overtime and relied on a formula for deriving the employees' hourly rate that that was not the "regular rate of pay" contemplated by the Act.  Id. at 209, 1184.  The agreement used the same hourly rate for all hours

worked between 1 and 46 hours, then an overtime rate would set in.  The purpose of the agreement was to avoid paying overtime until an employee's work exceeded 46 hours.  Further, the formula was not always used.  The agreement lowered the wages the employer had to pay if he were compliant with the Act.  In *Asselta*, the wage agreement was essentially set up to avoid proper payment of overtime.  In the present case, Defendants consciously included an overtime rate for all hours worked over 40 in a workweek as part of the Hitch rate.  In *Asselta*, there was no reference to a regulation such as 29 C.F.R. §778.309.  That regulation permits the Defendants to pay the Consultants a fixed sum for working a constant amount of overtime.

> *Asselta* evidences that Fire & Safety acted properly in this case by finding:

> > [a] wage plan is not rendered invalid simply because instead of stating directly an hourly rate of pay in an amount consistent with the statutory requirements, the parties have seen fit to stipulate a weekly wage inclusive of regular and overtime compensation for a workweek in excess of 40 hours and have provided a formula whereby the appropriate rate may be derived therefrom.

331 U.S. at 204, 67 S. Ct. at 1181.  Fire & Safety is distinguished from *Asselta* because the agreement in Fire & Safety was not designed to pay employees less than they were entitled to receive.  It was designed to pay them a fixed sum for straight and overtime hours worked.  The Defendants and the Consultants stipulated to a weekly wage inclusive of overtime and have provided a formula whereby the appropriate rates may be derived.  They have done so despite the fact that an hourly rate does not have to be listed for the Consultants.  They have complied with the Act.

**4.    The Department of Labor refused to consider its own Field Operations Handbook §32j06.**

The Department of Labor Wage & Hour Division *Field Operations Handbook* allows for a lump sum overtime payment.  Specifically, §32j06 of that manual states:

> Under appropriate circumstances, and where close scrutiny reveals there is a clear understanding between the employer and the employee that a lump-sum payment is predicated on at least time and one-half the established rate, and that overtime payment is clearly intended, the fact the payment is a lump sum will not result in a violation if it equals or exceeds the proper overtime payment due.

Exhibit 20. Fire & Safety's payment method is certainly legal under this section. However, Investigator Mathes did not recall whether she had consulted this section of the *Field Operations Handbook* during the investigation. Exhibit 10 at pg. 54 (lines 13-17). When asked if an understanding between the employer and employee that straight time and overtime was included in such a lump sum payment meant there was no violation of the Act, Investigator Mathes replied, "I believe so." Id. (lines 5-9). Thus, even the Investigator agrees that there was no violation of the Act here.

**5.     Defendants compensated certain employees with a traditional hourly wage, paying time and one-half for overtime hours.**

Certain Consultants were always paid a traditional hourly wage. Of particular importance is Mr. Jesse Gascon, to whom the Department of Labor has assigned unpaid wages. Exhibit 2, Gascon Affidavit. Mr. Gascon has been an hourly employee for the entirety of his employment with the Defendants. Id. The Department of Labor did not interview Mr. Gascon. Id. They have presented no document which would contradict his Affidavit testimony that he was paid hourly at all times during his employment. In fact, the Department's own documents reflect an hourly rate of pay for Mr. Gascon. Exhibit 5, DOL049. Clearly, at a minimum, Summary Judgment should be granted to the Defendants with specific regard to Mr. Gascon.

6.      **Plaintiff's Complaint is riddled with internal contradictions, such that a coherent investigation could not have taken place, substantially interfering with Defendants' ability to defend against their allegations.**

Plaintiff's investigation into Defendants' pay practices should be seriously called into question by the sheer volume of inconsistency in the allegations.  The Complaint contains mutually exclusive, conflicting claims which make it difficult for Defendants to even ascertain what, exactly, they are being accused of doing.   These inconsistencies bely a materially flawed investigation, which warrants dismissal of this action.

Plaintiff, in the same Complaint, sometimes even in consecutive sentences, accuses the Defendants of (1) paying non-exempt employees a salary, (2) not paying non-exempt employees a salary, (3) paying a day rate, (4) paying a per-Hitch salary, and (5) not paying a per-Hitch salary.  A Hitch rate is not a salary.  A day rate is not a Hitch rate.  A salary is not a day rate.  The very fact of any of these claims being true would preclude the truth of several of the others.

## IV.      Conclusion

There is no question that Defendants are entitled to summary judgment in this matter.  Fire & Safety has shown that its employees were paid in compliance with the Act.  There are no facts that call this conclusion into question.  There can be no claim that Fire & Safety violated the Act.  Thus, there can similarly be no claim that Mr. Harris, who at all times acted on behalf of Fire & Safety, violated the Act.  Based on the foregoing, Defendants respectfully request this Honorable Court grant their Motion for Summary Judgment and dismiss this matter from its docket, award Defendants attorney fees and costs, and that the Court award any other relief that it may deem just and appropriate under the circumstances.

Dated this 1st day of February, 2018.

**FIRE & SAFETY INVESTIGATION CONSULTING SERVICES, LLC, AND CHRISTOPHER HARRIS**

**By Counsel:**

s/ Karen H. Miller
Karen H. Miller (W. Va. Bar No. 1567)
Miller & Amos, Attorneys at Law
2 Hale Street
Charleston, West Virginia 25301
(304) 343-7910
Fax:  (304) 343-7915
E-Mail:  khmiller@karenmillerlaw.com