IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES DEPARTMENT OF LABOR,

      Plaintiff,

v.                             CIVIL ACTION NO. 1:17CV25
                                     (Judge Keeley)

FIRE & SAFETY INVESTIGATION
CONSULTING SERVICES, LLC; and
CHRISTOPHER HARRIS, Individually
and as Owner of Fire & Safety
Investigation Consulting Services, LLC,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

In this case, the United States Department of Labor ("DOL") alleges that the defendants, Fire & Safety Investigation Consulting Services, LLC ("Fire & Safety"), and Christopher Harris ("Harris"), violated the provisions of the Fair Labor Standards Act ("FLSA" or "the Act") by failing properly to pay their employees overtime compensation. The defendants deny these allegations, contending that they permissibly paid their employees a fixed rate for a set amount of overtime, and often paid their employees in excess of what the Act requires.

Pending are the parties' competing motions for summary judgment. For the reasons that follow, the Court **GRANTS in part** and

DEP'T OF LABOR V. FIRE & SAFETY                              1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

**DENIES in part** the DOL's motion (Dkt. No. 51), and **DENIES** the

defendants' motion (Dkt. No. 47).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Harris received his master's degree in safety management from

West Virginia University in 2001, and holds a number of

certifications in the safety and fire investigation industries

(Dkt. No. 52-3 at 13-14). After garnering experience as a fire

investigator and firefighter, Harris founded Fire & Safety in

Bridgeport, West Virginia, in 2008 (Dkt. Nos. 52-1 at 2; 52-3 at

15-20). Fire & Safety provided fire investigation and security

guard services in the oil and gas industry for several years. Then,

around 2013, it began to employ environmental site safety

consultants (Dkt. No. 52-3 at 23), to provide "onsite safety and

environmental consulting services for the oil and gas industry" in

West Virginia and Pennsylvania (Dkt. No. 52-1 at 3).

Consultants could be assigned to several phases of an oil and

gas operation, "such as drilling, hydraulic fracturing, coil

tubing, WSU, drill out, construction, midstream, production etc.,

based on their knowledge and experience" (Dkt. No. 52-2 at 3). For

each phase, a consultant conducted site safety inspection and

DEP'T OF LABOR V. FIRE & SAFETY                          1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

hazard identification, as well as job safety analysis review and coaching. Id. Consultants were also involved in environmental monitoring, accident investigation, and the documentation of daily events. Id. at 3-4. As described by Harris, Fire & Safety provided consultants to oil and gas operators to "observe, document and report" whether contractors were "in compliance with recommended safety practices" (Dkt. No. 52-3 at 25).

From December 23, 2014, through December 6, 2016, consultants were regularly scheduled to work on the basis of what is known in the oil and gas industry as a "hitch." See id. at 38-39. More particularly, Fire & Safety assigned the consultants to work 12 hours per day for 14 consecutive days, to be followed by 14 consecutive days off. This schedule resulted in an 84-hour workweek and a total of 168 hours during every two-week hitch (Dkt. No. 52-2 at 8). Although Fire & Safety initially paid all of its employees primarily on the basis of straight time and overtime rates, it eventually transitioned to a payment scheme and paid consultants on the basis of a "hitch rate" (Dkt. No. 52-5 at 32). In fact, a number of employment offer letters issued by Fire & Safety from

3

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

2014 through 2016 communicated the prospective employee's rate of pay as a fixed amount per hitch (Dkt. No. 52-4 at 2-24).[1]

If a consultant worked less than a full 168-hour hitch, Fire & Safety adjusted the employee's pay pursuant to a "blended rate." To calculate the consultant's blended rate, the company divided his hitch rate by 168, the total number of hours normally worked in a hitch. If a consultant did not work exactly 168 hours in a hitch, his pay would be determined by multiplying the number of hours he actually worked by his blended rate (Dkt. No. 52-5 at 44-50). For instance, a consultant usually paid $5,000 per hitch would have a blended hourly rate of $29.76. If that particular consultant worked only 6 days of a 14-day hitch, he was paid $2,142.72. Id. at 51-52.

In October 2015, an anonymous consultant complained to the DOL Wage & Hour Division that Fire & Safety was violating the FLSA by failing to pay overtime (Dkt. No. 47-9). Wage & Hour Investigator Karen Mathes ("Mathes") was assigned to the case on December 11, 2015, and first met with the defendants on January 21, 2016, to review records and ensure their compliance with the Act (Dkt. No.

_____

[1] The parties contest whether the hitch rates found any basis in straight time and overtime rates. See infra Part III.B.

4

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

52-8 at 52-53, 175). Ultimately, Mathes determined that Fire & Safety had failed to pay proper overtime and keep accurate records, and calculated back wages due in the amount of $855,684.16. Id. at 176. Although Fire & Safety agreed to take corrective action in the future, it refused to pay the back wages. In a Compliance Action Report dated January 26, 2017, Mathes recommended that the DOL litigate the case. Id. at 175-77.

The DOL filed the pending complaint against Fire & Safety and Harris on February 22, 2017 (Dkt. No. 1). Although, as the defendants have noted, the DOL's complaint is not a model of clarity, the upshot of its allegations is that the defendants improperly paid the consultants the same hourly rate for overtime work that it paid them for regular work. Id. at 3-5. In support of this allegation, the DOL attached to the complaint "Schedule A," which listed 68 employees who allegedly had not been paid proper overtime wages. Id. at 8-9. As relief, the DOL sought back wages, liquidated damages, and an injunction. Id. at 6-7.

Following discovery, the parties filed motions for summary judgment, which are now fully briefed and ripe for review (Dkt. Nos. 47; 51). In addition, the defendants have moved for attorney's

5

DEP'T OF LABOR V. FIRE & SAFETY                                    1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

fees and costs, and have filed an objection to the DOL's Revised

Schedule A (Dkt. Nos. 49; 60; 66).

## II. LEGAL FRAMEWORK

The FLSA was enacted "to protect all covered workers from

substandard wages and oppressive working hours" by requiring a

minimum wage and limiting the number of "hours an employee may work

without receiving overtime compensation." <u>Trejo v. Ryman

Hospitality Props., Inc.</u>, 795 F.3d 442, 446 (4th Cir. 2015)

(quoting <u>Barrentine v. Arkansas-Best Freight Sys., Inc.</u>, 450 U.S.

728, 739 (1981)). As relevant to this action, the Act provides:

> [N]o employer shall employ any of his employees who in
> any workweek is engaged in commerce or in the production
> of goods for commerce, or is employed in an enterprise
> engaged in commerce or in the production of goods for
> commerce, for a workweek longer than forty hours unless
> such employee receives compensation for his employment in
> excess of the hours above specified at a rate not less
> than one and one-half times the regular rate at which he
> is employed.

29 U.S.C. § 207(a)(1).

An "employer" is "any person acting directly or indirectly in

the interest of an employer in relation to an employee," and an

"employee" is "any individual employed by an employer." <u>Id.</u>

§ 203(d), (e)(1). The Act defines an "enterprise" as "the related

6

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

activities performed (either through unified operation or common control) by any person or persons for a common business purpose." Id. § 203(r)(1). An enterprise is subject to the FLSA if it is "engaged in commerce or in the production of goods for commerce," which means that it "has employees engaged in commerce or in the production of goods for commerce, or that [it] has employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." Id. § 203(s)(1)(A).

There is no dispute that the employees of Fire & Safety are covered by the FSLA. In their answer, the defendants admitted that Fire & Safety is an "enterprise" subject to the provisions of the FLSA (Dkt. No. 15 at 2). They have further admitted that their "employees regularly use goods and supplies from out of state, such as company owned vehicles, company owned laptops, phones, tools, safety gear, pens, pencils, and paper," and that Fire & Safety's "gross volume of sales made or business done was not less than $500,000 for each of the years 2013, 2014, 2015 and 2016" (Dkt. No. 52-1 at 3).

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

Nor do the defendants dispute that Harris himself qualifies as an "employer" subject to liability under the Act. To effectuate the remedial purpose of the FSLA, the Fourth Circuit broadly construes the meaning of its terms. See Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006). During the relevant time, Harris was the 100% owner of Fire & Safety; was responsible for hiring, directing work, and controlling the schedules of certain employees; determined the rate and method of pay for employees; and was responsible, in part, for assigning, scheduling, and supervising work (Dkt. Nos. 15 at 2; 52-1 at 3-4; 52-2 at 12). This is more than sufficient to satisfy the definition of an "employer" under the Act. Accord Hugler v. Dominion Granite & Marble, LLC, No. 1:17CV229, 2017 WL 2671300, at *3 (E.D. Va. June 21, 2017). Therefore, the Court concludes that Harris is an employer within the meaning of the Act.

### III. DISCUSSION

**A.   Objection to Revised Schedule A**

On February 22, 2018, the DOL filed Revised Schedule A, which contains three additional employees, Thomas Archer, Dwayne Clements, and Christopher Oliverio. According to the DOL,

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

"[i]nformation received subsequent to the filing of the Secretary's complaint has revealed that these three employees of the Defendants are owed back wages for violations of the [FLSA] as alleged in the complaint in addition to the employees identified in the original Schedule A" (Dkt. No. 60 at 1). The defendants have objected to the DOL's addition of the three employees, arguing that, by filing Revised Schedule A, the DOL has essentially amended the complaint after motions for summary judgment have been filed (Dkt. No. 66).

The allegations in the original complaint, however, were not confined to those employees specifically listed in Schedule A. In addition to referencing "certain present and former employees listed in the attached Schedule A," the complaint indicated that back wages and liquidated damages may be due for "certain present and former employees presently unknown" (Dkt. No. 1 at 6). Therefore, there has been no attempt by the DOL to amend its complaint by filing a Revised Schedule A, and the Court **OVERRULES** the defendants' objection (Dkt. No. 60).

B.   **Motions for Summary Judgment**

Both the DOL and the defendants have moved for summary judgment. Summary judgment is appropriate where the "depositions,

9

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Associates, LLC v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted).

10

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

1.   **Whether the Defendants Violated the FLSA by Failing to
     Pay Their Employees an Overtime Premium.**

The parties each contend that they are entitled to summary judgment regarding the question of whether the defendants violated the FLSA by failing to pay the consultants overtime compensation. The DOL insists that Fire & Safety failed to pay overtime because it "paid employees the same hourly rate for every hour they worked, regardless of whether they worked fewer than 40 hours in a workweek or more than 40 hours" (Dkt. No. 52 at 12). The defendants contend that they properly paid a fixed rate per hitch, which was based on both straight time and overtime wages, and actually overpaid the consultants when utilizing the blended rate (Dkt. No. 47-1).

a.   **Evidence That the Defendants Complied with the FSLA
     by Using a Fixed Rate.**

As discussed, the FLSA requires employers to pay their employees an overtime premium of one and one-half times the "regular rate" for hours worked in excess of 40 during any given

11

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

week. 29 U.S.C. § 207(a)(1). "That requirement was meant 'to spread employment by placing financial pressure on the employer' and 'to compensate employees for the burden of a workweek in excess of the hours fixed in the Act.'" Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 121 (4th Cir. 2015) (quoting Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 40 (1944)).

The Act does not "impose upon the almost infinite variety of employment situations a single, rigid form of wage agreement," but the agreement must contemplate a "regular rate" and overtime pay in compliance with the Act. 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 203-04 (1947). To that end, the FLSA's implementing regulations permit an employer to pay a fixed sum for overtime:

> Where an employee works a regular fixed number of hours in excess of the statutory maximum each workweek, it is, of course, proper to pay him, in addition to his compensation for nonovertime hours, a fixed sum in any such week for his overtime work, determined by multiplying his overtime rate by the number of overtime hours regularly worked.

29 C.F.R. § 778.309; see also Smith v. Ass'n of Maryland Pilots, 89 F.3d 829, 1996 WL 349998 (4th Cir. 1996) (unpublished table decision) (approving fixed-rate pay structure under § 778.309 where "there was a clear understanding . . . [that] overtime and wages

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

[were] included in the 12-hour day"); Sandel v. Fairfield Indus.,

Inc., No. 4:13-CV-1596, 2015 WL 7709583, at *2-*3 (S.D. Tex. June

25, 2015). Indeed, the Wage & Hour Division's Field Operations

Handbook recognizes that such a scheme may be acceptable if

appropriately administered:

> Under appropriate circumstances, and where close scrutiny
> reveals there is a clear understanding between the
> employer and the employee that a lump-sum payment is
> predicated on at least time and one-half the established
> rate, and that overtime payment is clearly intended, the
> fact the payment is a lump sum will not result in a
> violation if it equals or exceeds the proper overtime
> payment due. . . . This policy shall be applied very
> narrowly and shall not be applied to lump-sum payments
> which are nothing more than bonuses for working
> undesirable hours.

(Dkt. No. 47-21 at 7).

Here, the defendants have offered evidence that they complied

with § 778.309 by paying consultants a fixed rate that included

straight time and overtime pay. Harris testified that, when he

communicated employment offers to consultants, he would verbally

inform them of the straight and overtime rates, as well as the

total approximate amount of compensation for every 168-hour hitch

(Dkt. No. 52-3 at 45). This practice was corroborated by Fire &

Safety's internal accountant, who testified that, prior to making

13

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

employment offers, Harris would ask her to calculate hourly rates
on the basis of the hitch rate that he intended to offer the
prospective employee (Dkt. No. 52-5 at 32-33). Indeed, a number of
the defendants' employees submitted affidavits confirming that,
when hired or placed on a fixed rate, they were told that the rate
included both straight and overtime rates of pay (Dkt. No. 47-3).

> b.  The Regular Rate Actually Paid to the Consultants
> for All Hours Worked Violated the FSLA.

Even assuming that such an agreement existed, it clearly did
not reflect the regular rate of pay actually in effect. "The
regular rate is . . . an 'actual fact,' and in testing the validity
of a wage agreement under the Act the courts are required to look
beyond that which the parties have purported to do." 149 Madison
Ave., 331 U.S. at 204. In other words, "[o]nce the parties have
decided upon the amount of wages and the mode of payment the
determination of the regular rate becomes a matter of mathematical
computation, the result of which is unaffected by any designation
of a contrary 'regular rate' in the wage contracts." 29 C.F.R.
§ 778.108 (quoting Walling v. Youngerman-Reynolds Hardwood Co., 325
U.S. 419 (1945)). An "employee's 'regular rate' is the hourly rate

14

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

that the employer pays the employee for the normal, nonovertime forty-hour workweek." Flood v. New Hanover Cty., 125 F.3d 249, 251 (4th Cir. 1997) (citing Walling, 325 U.S. at 424). A brief survey of relevant cases assists in understanding these requirements.

In 149 Madison Ave. Corp. v. Asselta, the Supreme Court addressed a circumstance in which the rate identified under a wage agreement differed from the rate actually in effect. 331 U.S. 199. The plaintiffs in Asselta contracted for workweeks of either 46 or 54 hours, which were compensated on a weekly basis. The wage agreement derived the hourly rate from the weekly rate as follows:

> The hourly rates for those regularly employed more than forty (40) hours per week shall be determined by dividing their weekly earnings by the number of hours employed plus one-half of the number of hours actually employed in excess of forty hours.

Id. at 202. The non-overtime hourly rate thus was calculated by reference to "the hours the employee was scheduled to work and the weekly wage for such scheduled workweek." Id. Despite this agreement, the evidence established that the "regular rate" for purposes of the FSLA was "obtained by dividing the weekly wage payable for the working of the scheduled workweek by the number of

15

DEP'T OF LABOR V. FIRE & SAFETY                          1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

hours in such scheduled workweek; and . . . consequently, the plan made no adequate provision for overtime." Id. at 204-05.

The Supreme Court observed that, when determining the hourly rate for those who worked less than 40 hours a week, "no use whatsoever was made of the hourly rate derived from formula." Instead, they were paid a pro-rata share of the weekly wage. Id. at 205. "Nor was there consistent application of the hourly rate as determined by the formula to the work of regular employees," who were instead paid an amount "considerably in excess of the formula rate" when they worked less than a full workweek due to excusable absences. Id. According to the Supreme Court, "[t]he payment of 'overtime' compensation for non-overtime work raises strong doubt as to the integrity of the hourly rate upon the basis of which the 'overtime' compensation is calculated," and is "evidence of an attempt to pay a pro-rata share of the weekly wage." Id. Finally, when employees worked more than the scheduled workweek, they were paid "one and three-quarters of the formula rate," which closely approximated one and one-half the pro-rata wage actually paid. Id. at 206-07.

16

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

The employer challenged whether any of this evidence demonstrated that the formula rate was not the regular rate. It argued

> that part-time employees were paid a pro-rata hourly rate since they had no opportunity to earn overtime compensation; that the method of paying regular employees in case of excusable absences was merely a laudable effort on the part of the employee [sic] to compensate more fully than the Act requires when an employee failed to work his scheduled week because of illness or like causes; and that the time and three-quarters provision represented an additional premium for employees called upon to work hours substantially in excess of the non-overtime workweek.

Id. at 207-08.

The Supreme Court rejected this explanation, in part because "in every situation . . . the amount paid was either precisely or substantially that which employees would have been paid had the contract called for employment on a straight 46 hour week with payment of time and one-half only for hours worked in excess of 46." Id. at 208. The Court thus concluded that the "regular rate" actually in effect failed to compensate employees for overtime unless they worked in excess of their 46- or 54-hour workweek. Id. at 209.

17

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

The Second Circuit applied Asselta to a similar pay structure in Adams v. Department of Juvenile Justice of City of New York, 143 F.3d 61 (2d Cir. 1998). There, the plaintiffs were non-exempt employees who were paid an annual salary that contemplated 60-hour workweeks. The employer calculated each employee's hourly wage as follows:

> [F]irst, the annual salary for each Houseparent was divided by 52.2 to get the weekly salary. Next, the weekly salary was divided by seventy to get the hourly rate. The figure seventy was used to show that the first forty hours of work were compensated at straight time and the lasts twenty hours of work were compensated at time and one-half. The twenty hours of overtime were, therefore, expressible as thirty hours of straight time.

Id. at 64.

The circuit court reasoned that an employer may calculate a regular rate from a fixed rate, but such calculations are "not necessarily determinative where there is a sham wage agreement." Id. (citing Asselta, 331 U.S. at 204). It found the determinative question was "whether what actually occurred under the wage contract - as opposed to the mere terms of the contract - reflected an FSLA-sanctioned arrangement." Id. at 68. Finding that it could not answer this question on the record before it, the Second Circuit remanded the case to the district court for a determination

18

DEP'T OF LABOR V. FIRE & SAFETY                           1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

of the "regular rate" by reference, in part, to the amount docked when houseparents worked less than 60 hours. Id. at 70.

The "mathematical computation" of a regular rate was also at issue in Lopez v. Genter's Detailing, Inc., No. 3:09-CV-0553, 2011 WL 5855269 (N.D. Tex. Nov. 21, 2011), aff'd, 511 F. App'x 374 (5th Cir. 2013) (unpublished decision). There, the plaintiffs were paid a fixed hourly rate, which appeared on their paycheck stubs, for both regular and overtime hours. Id. at *1. The defendant argued that the hourly rate on the pay stub was a "blended rate" that included both rates. Id. Although it attempted to prove that its employees were aware of the "blended rate," the district court concluded that such a fact was immaterial to compliance with the FLSA. The "regular rate" was the rate on the plaintiffs' paychecks "because it was the rate the plaintiffs were paid for the first 40 hours they worked each week." Id. at *3-*4. Inasmuch as the defendant paid the regular rate "whether the plaintiff worked significantly more or significantly less than 40 hours per week," it violated the FLSA. Id. at *4.

Here, implementation of the parties' supposed agreement suffers from the same deficiencies identified in Asselta, and as

19

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

determined in <u>Adams</u> and <u>Lopez</u>. First, although it is not necessary
that there be a written agreement reflecting the regular rate, <u>see</u>
<u>Smith</u>, 89 F.3d 829, it is significant that the defendants never
recorded purported straight and overtime rates. For instance, to
provide Harris with an hourly rate to utilize during employment
negotiations, his internal accountant calculated the number and
provided it to him informally, such as on a Post-it note (Dkt. No.
52-5 at 34). Neither Harris, nor any relevant supervisor, included
that figure in the offer letters (Dkt. No. 52-4 at 2-24), nor did
they retain the accountant's calculation in their records (Dkt. No.
52-5 at 34).

During discovery, the accountant admitted that there were some
employees for which Fire & Safety "did not have a record of a
straight-time rate" (Dkt. No. 52-5 at 87). In point of fact,
straight and overtime rates were never included on the consultants'
paychecks (Dkt. No. 52-3 at 50-53). And, when Investigator Mathes
asked the defendants for payroll information, the accountant had to

20

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

calculate the missing straight-time rates to include them in a spreadsheet (Dkt. No. 52-5 at 84-87).[2]

Second, in practice, the alleged straight and overtime rates were never used to calculate pay when a consultant worked less than a full hitch. Instead, the defendants always applied a blended rate to "[a]nything outside the full hitch," despite the fact that Fire & Safety's accountant did not know whether the blended rate had ever been communicated to employees (Dkt. No. 52-5 at 49-50, 108-109). Critically, the blended rate was used to pay consultants not only when they worked less than 84 hours in a week, but also when they worked less than 40 hours in a week (Dkt. No. 52-8 at 100). Therefore, the undisputed evidence of record establishes that the "blended rate" is the regular rate for purposes of the FLSA.

The defendants' arguments to the contrary are unconvincing. For instance, they argue that the blended rate resulted in consultants being paid more than they were entitled to receive under the agreed straight-time rate. While this fact certainly is

_____

[2] Tellingly, the first time the accountant heard the term "blended rate" was during the Wage & Hour Division investigation (Dkt. No. 52-5 at 103), and the defendants have not produced any existing record of straight time rates for consultants who were paid a hitch rate (Dkt. No. 56 at 16 n.4).

21

DEP'T OF LABOR V. FIRE & SAFETY                          1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

relevant to determining whether the blended rate violated the FSLA,
it is not determinative. Adams, 143 F.3d at 70 n.9 (citing Asselta,
331 U.S. at 207-08). By her own admission, the defendants'
accountant did not realize that the consultants were being
"overpaid" by the blended rate until the Wage & Hour Division began
its investigation (Dkt. No. 52-5 at 99). This supports the
conclusion that the blended rate was the regular rate, not that
Fire & Safety "laudabl[y]" paid its employees more than they were
entitled to receive. See Asselta, 331 U.S. at 207-09.

In addition, the pay structure utilized before and after the
hitch and blended rates bears little relevance to the issues in
this case. Several Fire & Safety employees submitted affidavits
indicating that their pay remained substantially the same when the
defendants transitioned to using the hitch rate and blended rate in
2014 (Dkt. No. 47-3; 52-5 at 107). As well, the evidence is that,
since January 2017 when the defendants reverted to paying on the
basis of straight and overtime rates, the consultants' compensation
has remained substantially the same (Dkt. No. 47-3). But the FSLA
is not concerned with whether consultants' total compensation was
fair in the industry or approximated the pay under a lawful scheme.

22

DEP'T OF LABOR V. FIRE & SAFETY                                 1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

The facts here simply do not justify the defendants' improper use of a single regular rate for all hours worked. "Any other conclusion . . . would exalt ingenuity over reality and would open the door to insidious disregard of the rights protected by the Act." Helmerich & Payne, 323 U.S. at 42.

The Court concludes that the defendants failed to pay their consultants overtime compensation as required by the Act and **GRANTS** the DOL's motion for summary judgment on this issue.

**2.   Whether the Defendants Failed to Keep Proper Records.**

The DOL contends that it is entitled to summary judgment regarding the defendants' failure to maintain proper records (Dkt. No. 52 at 19). The Act requires employers to "make, keep, and preserve" records of the persons they employ, as well as "the wages, hours, and other conditions and practices of employment," for a period of time set forth in the regulations. 29 U.S.C. § 211(c). The regulations specify that employers "shall maintain and preserve payroll or other records containing . . . [h]ours worked each workday." 29 C.F.R. § 516.2(a)(7). The defendants do not dispute that they failed to keep a record of the hours worked

23

DEP'T OF LABOR V. FIRE & SAFETY                          1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

each workday by the consultants (Dkt. Nos. 52-9 at 14; 54).[3]

Therefore, the Court **GRANTS** the DOL's motion for summary judgment

regarding the defendants' failure to maintain appropriate records

under the Act (Dkt. No. 52 at 19).

> **3.   Whether the Defendants Are Liable for the Quantity of
> Back Wages Due As Calculated by the DOL.**

The DOL contends that it is entitled to summary judgment

regarding the amount of back wages due (Dkt. No. 52 at 16-17).

Title 29 U.S.C. § 216(b) provides that "[a]ny employer who violates

[§ 207] shall be liable to the employee or employees affected in

the amount of . . . their unpaid overtime compensation . . . and in

an additional equal amount as liquidated damages." When employees

have already received straight-time pay for all hours worked,

"unpaid overtime compensation" due under the Act is 50% of the

regular rate for the overtime hours worked. <u>Desmond</u>, 630 F.3d at

354-57.

---

[3] Contrary to the defendants' assertion, that their records accurately contain "the hours worked and pay received by [the] employees" does not necessarily mean that the hours were recorded in compliance with the Act and its implementing regulations (Dkt. No. 54 at 9).

24

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

Here, the DOL calculated that 70 of the defendants' employees who were not paid overtime compensation are owed a total of $817,902.11 in back wages (Dkt. No. 52-6 at 5). In support of this calculation, the DOL submitted the declaration of Catherine Glencoe ("Glencoe"), the Assistant District Director at the Wage & Hour Division, who worked with Mathes during the investigation of this case (Dkt. No. 52-6). According to Glencoe, the DOL calculated back wages by multiplying overtime hours by 50% of the regular rate - the blended rate - and she provided detailed spreadsheets of the back wages calculations. Id. at 4, 11.

In response, the defendants assert that there are "numerous problems" with the calculations, such as incorrect dates and hours (Dkt. No. 54 at 8-9). They do not point to a single specific error in the DOL's calculations, nor have they provided their own damages calculations.[4] Their conclusory allegations are insufficient to establish a dispute of material fact for trial, given the lack of

---

[4] The defendants contend only that the DOL improperly calculated back wages for one specific employee, Jesse Gascon, who "was always paid using a traditional hourly rate and time and one-half for overtime" (Dkt. No. 54 at 8). As Glencoe outlined in her declaration, however, the DOL has conceded this error and accordingly removed Jesse Gascon from its back wage calculations (Dkt. No. 52-6 at 5).

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

any specific evidence upon which a jury could reach a contrary calculation of back wages. See White v. Rockingham Radiologists, Ltd., 820 F.2d 98, 101 (4th Cir. 1987). Therefore, the Court **GRANTS** the DOL's motion for summary judgment regarding the defendants' liability for back wages due in the amount of $817,902.11.

**4.   Whether the Defendants Are Liable for Liquidated Damages.**

The DOL next contends that it is entitled to summary judgment regarding the defendants' liability for liquidated damages (Dkt. No. 52 at 17-19). Liquidated damages are "mandatory" unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." Perez v. Mountaire Farms, Inc., 650 F.3d 350, 375 (4th Cir. 2011) (alteration in original) (quoting 29 U.S.C. § 260). The burden "is a difficult one to meet, however, and '[d]ouble damages are the norm, single damages the exception.'" Perez v. Mountaire Farms, Inc., 610 F. Supp. 2d 499, 527 (D. Md. 2009) (quoting Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987), aff'd in part and vacated in part on other grounds, 650 F.3d 350

DEP'T OF LABOR V. FIRE & SAFETY                              1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

(4th Cir. 2011). A decision on liquidated damages is reviewed for abuse of discretion. Mountaire Farms, Inc., 650 F.3d at 375.

Critically, "an employer 'may not simply remain blissfully ignorant of FLSA requirements" by taking "an 'ostrichlike' approach to the Act." Roy v. Cty. of Lexington, S.C., 141 F.3d 533, 548-49 (4th Cir. 1998). "The good faith requirement mandates that the employer have an honest intention to ascertain and follow the dictates of the Act," including "some investigation of potential liability." Quirk v. Baltimore Cty., Md., 895 F. Supp. 773, 788 (D. Md. 1995) (internal quotation omitted). Factors for the Court to consider include whether the defendants' conduct was willful, whether they consulted attorneys or the Wage & Hour Division, and whether they sometimes compensated the consultants more generously than the Act requires. Roy, 141 F.3d at 548-49.

Here, the defendants have not met their burden to establish that liquidated damages are inappropriate in this case. Mountaire Farms, Inc., 650 F.3d at 375. Although they contend that there is no evidence they willfully violated the FSLA, and assert the consultants' pay in fact did not change substantially when the defendants transitioned to hitch rates (Dkt. Nos. 47-3; 54 at 18),

DEP'T OF LABOR V. FIRE & SAFETY                              1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

the deposition testimony in this case establishes that they took the "ostrichlike" approach forbidden under the Act. Roy, 141 F.3d at 548-49.

The defendants admit that they did not consult with an accountant or attorney regarding FLSA applicability between January 2014 and January 2016 (Dkt. No. 52-1 at 4). When Fire & Safety implemented the hitch rate, Harris testified that he relied on his human resources and accounting employees to ensure compliance with overtime regulations (Dkt. No. 52-3 at 137). He did not recall whether he actually inquired of his employees regarding FSLA compliance, and frankly admitted that he had not taken other precautionary measures:

    Q.   Did you ask your [outside] accountant?[5]

    A.   I don't remember if they did or not. I didn't, but
         they may have.

    Q.   Did you ask [human resources or accounting] if they
         asked the [outside] accountant?

    A.   I don't recall.

_____

[5] The defendants utilized local accounting firm Secret & Shields to assist with payroll and records (Dkt. No. 52-5 at 26-28). "They process the payroll, they calculated the withholdings, they cut the checks." Id. at 28.

28

DEP'T OF LABOR V. FIRE & SAFETY                           1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

Q.   Did you attend any training sessions or read any
     books about how this change might affect --

A.   No.

Q.   -- the overtime? Did you consult with an attorney
     about the change this might have?

A.   No.

Q.   So, essentially, you made this change and didn't
     really think twice about how this could affect your
     obligations on the FSLA?

A.   No, because I had no employees complain, and no one
     ever complained about their pay being late or
     wrong, and everybody worked -- they were paid what
     they agreed to and what I agreed to with them.

Id. at 138.

Fire & Safety's internal accountant, whose duties included

payroll, testified that she had "limited knowledge" of the FSLA

(Dkt. No. 52-5 at 14, 25). She did not know whether anyone at Fire

& Safety "consulted with an accountant, attorney, [or] outside

professional" regarding FSLA compliance, but acknowledged that she

never consulted with the company's outside accountant regarding

overtime. Id. at 101. In fact, Fire & Safety's outside accountant

was not involved with calculating the appropriate pay for

consultants. The consultants' pay "was calculated in the house" and

transmitted to the outside accountant as a "gross amount due" (Dkt.

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

No. 52-3 at 112). Nor is there any evidence that any human resources employee of the defendants consulted with an attorney or accountant regarding the Act.

Although the defendants did not engage in willful or malicious conduct, the undisputed evidence makes clear that they made no attempt to ascertain or investigate their obligations under the Act. Quirk, 895 F. Supp. at 788. This is exactly the type of conduct that liquidated damages under the FSLA are meant to address. See Roy, 141 F.3d at 548-49. Therefore, the Court **GRANTS** the DOL's motion for summary judgment on its claim for liquidated damages.

### 5.   Whether the DOL Is Entitled to Injunctive Relief.

When a defendant violates the Act by failing to pay overtime compensation, district courts may enjoin future violations of the FSLA "for cause shown." 29 U.S.C. § 217. "The Secretary, as the party asserting jurisdiction, bears that burden to satisfy the Court that an injunction is necessary." Chao v. Virginia Dep't of Transp., 157 F. Supp. 2d 681, 689-90 (E.D. Va. 2001), rev'd on other grounds, 291 F.3d 276 (4th Cir. 2002) (citing Metzler v. IBP, Inc., 127 F.3d 959, 963 (10th Cir. 1997)).

DEP'T OF LABOR V. FIRE & SAFETY                          1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

As the Ninth Circuit has explained, prospective injunctions effectuate the national policy of the FSLA by placing the cost of noncompliance on the employer. Brock v. Big Bear Market No. 3, 825 F.2d 1381, 1383 (9th Cir. 1987). "In deciding whether to grant injunctive relief, a district court must weigh the finding of violations against factors that indicate a reasonable likelihood that the violations will not recur." Id. Such factors include present compliance, bona fide intent to comply, good faith coupled with extraordinary efforts to prevent recurrence, the absence of repetitive violations, and the absence of bad faith. Id.; see also Chao, 157 F. Supp. 2d at 689-90 (collecting cases).

Here, the DOL has not established cause for the issuance of a prospective injunction. It alleges only that "the defendants owe a substantial amount of back wages to their employees for overtime violations, and they have not presented any evidence that they have come into compliance" (Dkt. No. 52 at 19-20). The burden to establish the propriety of an injunction rests on the DOL, which has failed to address many of the relevant factors. Chao, 157 F.

31

DEP'T OF LABOR V. FIRE & SAFETY                    1:17CV25

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]**

Supp. 2d at 689-90.[6] Therefore, the Court **DENIES** the DOL's motion for summary judgment seeking injunctive relief.

C.   **Motion for Attorney's Fees and Costs**

When they moved for summary judgment, the defendants moved separately for an award of attorney's fees and costs (Dkt. No. 49). Under 28 U.S.C. § 2412(a)(1), the Court may award attorney's fees and expenses "to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action." Because the defendants have not prevailed in this case, the Court **DENIES** their motion for attorney's fees and costs (Dkt. No. 49).

## IV. CONCLUSION

For the reasons discussed, the Court:

1)   **OVERRULES** the Defendants' Objection to Plaintiff's Revised Schedule A (Dkt. No. 66);

---

[6] In fact, the defendants have submitted evidence that they have come into compliance with the use of straight and overtime rates (Dkt. No. 47-3).

DEP'T OF LABOR V. FIRE & SAFETY                           1:17CV25

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE UNITED STATES DEPARTMENT OF LABOR'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47], AND
DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES [DKT. NO. 49]

2)  **GRANTS in part** and **DENIES in part** the Plaintiff's Motion for Summary Judgment (Dkt. No. 51);

3)  **DENIES** the Defendants' Motion for Summary Judgment (dkt. No. 47);

4)  **DENIES** the Defendants' Motion for Attorney Fees and Costs (Dkt. No. 49);

5)  **DENIES AS MOOT** the defendants' motions in limine (Dkt. Nos. 90; 92);

6)  **DENIES AS MOOT** the defendants' Motion to Dismiss and Alternative Motion to Compel (Dkt. No. 99);

7)  **DISMISSES** this case **WITH PREJUDICE.**

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record, to enter a separate judgment order, and to strike this case from the Court's active docket.

DATED: May 3, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE